JAMES CARTER *vs.* NATHANIEL F. CUNNINGHAM & another.

Where a partner in a mercantile house in Boston was sent to Mobile for a limited time, to do, among other things, commission business there, and goods were consigned to him from Boston, and advances were made on the goods by the house at Boston, it was *held,* in the absence of any special agreement, that the advances were to be repaid at Boston, and not at Mobile, and that the expense of remitting the proceeds of the goods, including a premium on exchange, if incurred prudently, and according to the course of mercantile dealing, was chargeable to the consignor.

ASSUMPSIT to recover the balance alleged to be due on account of certain shipments of nails and iron made by the plaintiff to the defendants, at Mobile, Alabama, in 1837 and 1838. Trial before *Wilde,* J., whose report thereof was as follows :

It appeared that the defendants were a firm in Boston, who had been in the habit, for many years before 1837, of having one of the firm reside at Mobile, in the winter, for the purpose of buying cotton on their own and others' account, selling goods

there on commission, and doing there the usual business of a commission house. It further appeared, that the abovementioned shipments of nails and iron were made by the plaintiff, at Boston, to the defendants' partner, Childs, at Mobile, and that advances were made on the shipments, to the plaintiff here, by the defendants, by their notes at four or six months. Regular accounts of the sales of the shipments, as they were made, were from time to time forwarded to the plaintiff by the said Childs, at Mobile. The defendants charged the plaintiff with the rate of exchange between Boston and Mobile upon the net proceeds of the sales, at the time they were realized there.

The defendants' book-keeper, being called by them as a witness, identified their accounts current, and that of the plaintiff, and testified that the proceeds of the sales included in these accounts were invested in bills on the north and sent to the defendants ; that said Childs remitted money from Mobile by bills indiscriminately, without regard to the particular sales ; and that his business there was a general commission business, selling goods, and collections. In making up the accounts, the witness took the amount received for sales at Mobile, as they fell due, and then took the current rates of exchange in Mobile on Boston. The aggregate of net sales was $13,184·05 ; remitted $11,709·45 ; difference $1474·60 ; rate of exchange on amount remitted, 12½ per cent. The witness took the rate of exchange on bills at sight, and added one fourth of one per cent. for time of transmission and grace ; as he did in adjusting accounts with other houses. The rates of exchange were obtained from prices current, and actual transactions taken from the defendants' books. The witness further stated that said Childs, in sending the accounts to Boston, took them from his books ; that there were instances in which the exchange thus charged was allowed here ; that the remittances made by Childs were made in exchange, by instructions from the defendants, and were made by mail, in bills at sight, at sixty days, &c. The witness further testified, that the plaintiff was occasionally in the defendants' counting room in Boston, and the advances made by them to him were talked of ; that he once asked for further advances

which Cunningham, one of the defendants, refused to make, giving as a reason, that exchange was high, and he had advanced enough.    The witness did not recollect that the plaintiff made any objection to the exchange until after the accounts were made out.

The plaintiff put into the case two letters written by him to Childs, in November and December 1837, and Childs's answers thereto; also a letter from Childs to the plaintiff, dated January 24th 1838.    Several depositions were introduced by both parties ; and from the whole evidence (which it is not necessary to set forth) the plaintiff contended that the defendants had no right to charge the rate of exchange between Mobile and Boston. 1st. Because they had no right to remit at all.   2d. Because the evidence showed a special agreement that the defendants should take and account for the funds, as cash, at Mobile. 3d. Because the funds were not actually remitted specifically, on account of the plaintiff's sales, but only generally.

The jury were instructed, that if they were satisfied that there was no special agreement between the parties, in relation to the exchange and place where the advances should be repaid, then, upon the evidence before them, if believed, the inference would be that the moneys advanced were to be repaid here, and not at Mobile ; and that if the exchange from Mobile to Boston was at a premium, so that the money could not be remitted in the ordinary mode without payment of the premium, the ordinary rate of exchange was chargeable, although the several amounts received for sales of the plaintiff's goods were not remitted specifically by themselves, but promiscuously with the other sums remitted by the parties in Mobile to the house here, in bills or otherwise, as testified.

The jury found that there was no special agreement upon the subject of the exchange.   Whereupon a general verdict was taken for the defendants, subject to the exception taken by the plaintiff to the above instructions.   If those instructions were correct, the case is to be sent to an auditor to report upon the amount of exchange properly chargeable, upon the evidence in the case ; and the verdict is to be confirmed or set aside, and

42

judgment to be entered, according to such report. But il the instructions were incorrect, a new trial is to be granted.

*Robins,* for the plaintiff, referred to *Grant* v. *Healey,* 3 Sumner, 523, and cases there cited.

*C. G. Loring,* for the defendants.

SHAW, C. J. We think the instruction was right. That instruction was, that if there was no special agreement as to the mode and place in which the advances were to be repaid, the interence would be, on the evidence, if believed, that they were to be repaid here and not at Mobile. An advance on goods consigned for sale implies that the goods are to be sold for account of the consignor, and the net proceeds applied to repay the advance. Of course the consignor is entitled to the profits of the sale, and must be responsible for all charges and expenses incident thereto, from the time of the consignment to the time of the reimbursement. Had the house making the advances been established at Mobile, it would have presented a very different question; but the house was established here; and by agreement, for the benefit of the consignor, the goods were to be sent to Mobile, to enable him to have the benefit of the market there. They were there to be sold by a partner of the defendants, sent there for a limited time and a special purpose, and that known to the parties. That partner had no authority to invest the proceeds of the plaintiff's goods in merchandize, to be shipped at his risk and ex pense. Then the inference from the facts is, that the advance was to be repaid here, and, for that purpose, that the proceeds of the goods were to be received in Mobile, and remitted to Bos ton; and the expense of such remittance must be borne by the plaintiff. If it was prudent, and according to the usual course of mercantile dealing, to remit in specie, and if specie was above par, then the cost of obtaining specie, with freight and insurance, would be chargeable to the plaintiff. So if it was prudent and usual to remit in exchange, then, for the same reason, the premium on exchange would be chargeable. The case is therefore to be referred to an auditor, conformably to the agreement of the parties.